UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANTHONY-CORTEZ WEBB,                Case No. 1:25-cv-00652

    Plaintiff,

                                                           Dlott, J.
    v.                                                           Bowman, M.J.

GUARANTEED RATE INC., et al.,

    Defendants.

**REPORT AND RECOMMENDATION**

On September 8, 2025, Plaintiff, proceeding pro se, filed an application seeking to proceed *in forma pauperis*, together with a complaint that seeks damages and equitable relief for claims against the Defendant Guaranteed Rate Inc. and John Does 1-10 "involved in the assignment, transfer, or securitization of Plaintiff's mortgage." (Doc. 1-1, PageID 4.)

For the reasons that follow, the undersigned recommends the sua sponte dismissal of Plaintiff's complaint.

**I. General Screening Authority**

By separate Order issued this date, Plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. As a result, the complaint is now before the Court for a sua sponte review to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

1

Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if satisfied that the action is frivolous or malicious. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *see also* 28 U.S.C. § 1915(e)(2)(B)(i). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams*, 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327.

Congress has also authorized the sua sponte dismissal of complaints which fail to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). Although a plaintiff's pro se complaint must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers," the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotation omitted)). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915(e)(2)(B)(ii) and 1915A(b)(1)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557.

## II. Analysis

### A. Summary of Allegations in Plaintiff's Complaint

Plaintiff's claims are based on a residential Mortgage and Promissory Note that he signed on February 23, 2022. (Doc. 1-1, ¶ 9.) Plaintiff[1] seeks damages and equitable relief "for the harm suffered as a result of a fraudulent mortgage transaction executed under material non-disclosure and semantic deceit, which induced Plaintiff into unknowingly providing the financial value to fund his own mortgage." (Doc. 1-1 at ¶ 2.) The precise nature of the "material non-disclosure" is unclear, but seems to be centered on Guaranteed Rate, Inc.'s assignment of the Note and Mortgage to JPMorgan Chase Bank, N.A. ("Chase") and a later foreclosure action by Chase.

---

[1] Plaintiff identifies himself as "a natural living man, sui juris, an American National residing in Ohio, not a U.S. citizen under the 14th Amendment, proceeding in propria persona." (Doc. 1-1, ¶ 6.) That description is reminiscent of the "meritless rhetoric frequently espoused by tax protesters, sovereign citizens, and self-proclaimed Moorish Americans." *United States v. Coleman*, 871 F.3d 470, 476 (6th Cir. 2017). Any claims based on such meritless rhetoric should be summarily dismissed as frivolous. *Davis v. McClain*, No. 2:19-CV-3466, 2019 WL 5853474, at *3 (S.D. Ohio Nov. 8, 2019).

Plaintiff alleges that in May 2022, he learned that the Note "was monetized and used by the lender to create credit, without disclosing this material fact to Plaintiff." (*Id.*, ¶ 11.) He alleges that "[t]he value used to fund the loan was, in truth, derived from Plaintiff's own signature, making the contract a unilateral and deceptive transaction lacking lawful and equitable consideration." (*Id.*, ¶ 12.) Plaintiff further alleges that Defendant failed to inform him that it would not provide its own assets or funds to fund his mortgage, that his Note "would become an financial instrument or asset" and that it "would be sold, securitized, or assigned without disclosure or consent." (*Id.*, ¶ 13.)[2] Referencing the alleged nondisclosures, Plaintiff asserts that "[a]s a direct result of these deceptive practices, Plaintiff was targeted by a third-party debt collector (JPMorgan Chase Bank), sued, and suffered damage to his credit and reputation." (*Id.*, ¶ 17.)

Plaintiff's exact claims are not a model of clarity. In the first paragraph of the complaint, he asserts claims for "fraud, breach of contract, lack of full disclosure, unjust enrichment, and violation of [unspecified] federal lending and commercial disclosure laws." (*Id.*, ¶ 1.) In the third paragraph, he alludes to claims for "emotional distress, slander of credit, unlawful conversion of financial instruments, and punitive measures against egregious conduct," as well as a claim seeking "equitable relief in the form of a return of the original deed/title to the property…." (*Id.*, ¶ 3.) Under a "Factual Allegations" heading, he refers to the alleged "omissions" at the time of his execution of the Mortgage and Note as supporting claims for fraudulent inducement and constructive fraud, as well as violations of the Truth in Lending Act (TILA) and Uniform Commercial Code (UCC) provisions." (*Id.*, ¶ 14.) And in a concluding section entitled "Causes of Action," Plaintiff

---

[2]Although it appears that Guaranteed Rate, Inc. may be a nonbank mortgage lender, the undersigned understands Plaintiff's reference to "the bank" in ¶13 to refer to that sole named Defendant.

4

purports to set out five specific claims against Guaranteed Rate Inc.: fraudulent inducement (Count I), breach of contract (Count 2), violation of TILA (Count 3), unjust enrichment (Count 4), and declaratory and equitable relief (Count 5). He does not name or assert any direct claims directly against JPMorgan Chase Bank, but asserts Counts 4 and 5 against ten John Doe entities "involved in the assignment, transfer, or securitization of Plaintiff's mortgage" as well as the named Defendant. (Doc. 1-1, PageID 4.)

### B. Judicial Notice of Prior Cases

### 1. Prior State Court Foreclosure Case

The undersigned takes judicial notice that a foreclosure action was filed in state court on December 16, 2022 against the Plaintiff herein ("Webb") regarding the same Mortgage and Promissory Note.[3] *See JPMorgan Chase Bank, N.A. v. Webb*, Hamilton County Court of Common Pleas Case Nos. A2204600. The original complaint filed by Chase in state court includes copies of the Note, the Mortgage securing the Note, and the assignments of the mortgage to Chase. (*See* Exhibits A-C attached to state court complaint.)

The 190 publicly available docket entries in the state foreclosure action confirm Webb's vigorous, but ultimately unsuccessful, defense. On January 4, 2023, for example, Webb filed a "demand for verification and motion to dismiss" as well as a counterclaim. In that motion and counterclaim, Webb avers that he received a letter from Chase on September 9, 2022 that provides an acceleration warning and notice of intent to

---

[3]This Court may consider "any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Public records can include, among other items, records from state foreclosure actions. *See Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 936–37 (N.D. Ohio 2009).

foreclose.[4] In part, Webb's motion and counterclaim disputed Chase's status as a "lender." In a convoluted argument, Webb cited to accounting principles to argue that he (Webb) was the lender and that Chase was the borrower, because Webb's Note "was recorded as a bank asset…."[5] A magistrate rejected Webb's arguments, denying Webb's motion to dismiss the foreclosure action and granting Chase's motion to dismiss Webb's counterclaim. The state court adopted those decisions on July 25, 2023, August 7, 2023, and November 21, 2023. Webb did not appeal.

On November 13, 2023, Webb filed another motion seeking dismissal based on Chase's "lack of standing." The magistrate again denied Webb's motion (along with related documents) and granted Chase's motion for default judgment on the foreclosure claim. Those decisions were adopted by the state court on March 1, 2024 and July 3, 2024. A final judgment entry and decree of foreclosure was entered on July 3, 2024, to which Webb also filed no appeal.

On September 30, 2024, Webb filed a motion to vacate the Order of Sale. An Order dated November 19, 2024 reflects the sale of the property to Chase. On March 17, 2025, a magistrate denied Webb's still-pending motion to vacate the Order of Sale. That decision was adopted by the state court on April 2, 2025, the same date as the Journal Entry confirming the prior sale and assignment by Chase of its bid to Federal National Mortgage Association. Once again, Webb filed no appeal. The most recent docket entry reflects that an Order for Possession was issued on August 29, 2025.

It is worth noting that Webb's motion to vacate the Order of Sale challenged the

---

[4] Webb attached a copy of Chase's letter as an exhibit to his state court motion.
[5] Webb's more detailed state court arguments against Chase being a "lender" and not actually funding his mortgage call to mind the more cursory arguments that Plaintiff asserts against Defendant Guaranteed Rate Inc in this case.

6

validity of the mortgage in part on grounds that he had sent a Request for Validation of Debt to Guaranteed Rate, Inc. on November 3, 2022 and a Notice of Non Response to the same entity on January 28, 2023– allegations that are repeated in his current federal complaint. (*See* Doc. 1-1, ¶ 15.) In the order adopted by the state court on April 2, 2025, a magistrate rejected Webb's contention that

> the Order of Sale should be vacated on the grounds that he submitted a Request for Validation of Debt to Guaranteed Rate, Inc. on November 3, 2022, to which they allegedly did not respond…. A review of Plaintiff's Complaint reveals that the subject Note and Mortgage were assigned to JPMorgan Chase Bank as illustrated by the blank indorsement and Assignment of Mortgage recorded October 6, 2022 …. As such, Guaranteed Rate, Inc. was not the correct party to request a validation/verification of debt from pursuant to the Fair Debt Collection and Practice Act as they no longer held the Note and Mortgage.

(Magistrate decision of 3/17/25.) In short, the state court upheld the validity of the Note and Mortgage held by JPMorgan Chase Bank when it denied Webb's motion to vacate the Order of Sale, and reaffirmed the entry of default judgment on the foreclosure in Chase's favor.

### 2. Prior Federal Case

The undersigned also takes judicial notice of a prior case filed in this Court by Webb regarding the same state foreclosure proceeding. *See Webb v. Beridon*, No. 1:24-cv-43-DRC-SKB. In his prior case, Plaintiff sued the state court magistrate who issued the decision recommending the foreclosure sale, the attorney and law firm that represented JP Morgan Chase Bank, N.A., and the State of Ohio.[6] Plaintiff alleged in part that the magistrate's January 2024 decision entering default judgment in favor of Chase was "a conspiracy to deprive the Plaintiff of his property without the admiration of justice

---

[6]Plaintiff did not name JPMorgan Chase Bank in his prior federal case.

7

and a violation of Plaintiff's due process rights under 42 U.S.C. §§ 1983, 1985 and 1986. *Id.*, 2024 WL 3666358, *2 (describing claims including claims that the "wrongful foreclosure" violated the Truth in Lending Act and constituted a breach of contract.)

The undersigned recommended sua sponte dismissal of Webb's prior case on the basis of absolute judicial immunity (for the defendant state court magistrate) and the *Rooker-Feldman* doctrine. The presiding district judge adopted the Report and Recommendation only in part. *Id.*, 2024 WL 3421998 (S.D. Ohio July 16, 2024). The Court agreed that Plaintiff's suit was subject to sua sponte dismissal for lack of federal subject matter jurisdiction, but on different grounds. Specifically, the Court held that Webb lacked standing to challenge the state magistrate's decision because that decision alone had "no legal effect" without adoption by the state court. Therefore, Webb could claim no legally cognizable injury. *Id.*, at *3. Because Plaintiff lacked standing to bring his asserted federal claims, the Court declined to exercise supplemental jurisdiction over the related state claims for slander of credit and intentional infliction of emotional distress. *Id.*, at *4.

**II. Analysis**

Plaintiff's current complaint is subject to sua sponte dismissal.

**A. Plaintiff Fails to State any Plausible Claim**

Plaintiff's complaint is long on conclusions and short on factual support. As best the undersigned can determine, Plaintiff claims that the February 2022 documents consisted of a "fraudulent mortgage" because the money that funded the mortgage debt did not come directly from Guaranteed Rate Inc. and Defendant subsequently securitized or assigned the Note to Chase. None of the allegations in the complaint are sufficient to make out any plausible claim.

8

### 1. Failure to State a Claim for Fraudulent Inducement

In Count I, Plaintiff alleges that Defendant Guaranteed Rate Inc. committed the tort of "fraudulent inducement." He specifically alleges that "Defendant misrepresented the nature of the mortgage transaction and failed to disclose material facts necessary for informed consent." (Doc. 1-1, ¶ 20.) Under Ohio law, a claim for fraudulent inducement requires a plaintiff to prove the following elements:

> a representation or, when there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard as to whether it is true or false that such knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) with justifiable reliance on the misrepresentation or concealment, and (6) an injury proximately caused by that reliance.

*Deutsche Bank Natl. Trust Co. v. Pevarski*, 932 N.E.2d 887, 899, 187 Ohio App.3d 455, 470–71, 2010 -Ohio- 785, ¶ 43 (Ohio App. 4 Dist., 2010). Under Fed. R. Civ. P. 9(b), a claim of fraud must be pled with particularity.

Plaintiff does not identify any specific affirmative representations made by anyone to him at the time he executed the Note and Mortgage. Nor does he identify any facts that would give rise to some sort of a fiduciary or other relationship that would create a special duty to disclose information beyond that contained in the Note and Mortgage. Relevant to the alleged non-disclosure, Plaintiff has attached pages of the February 2022 Note and Mortgage agreement as an exhibit to his complaint.[7] The exhibit contains language that unmistakably permits sale of the Note without prior notice to the Borrower:

> 20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be .sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects

---

[7]Full copies of the same Note and Mortgage are also attached to Chase's complaint in the state court foreclosure action.

> Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer. Borrower will be given written notice of the change winch will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

(Doc. 1-1, PageID 27-28.)

In *Thompson v. Bank of America, N.A.*, 773 F.3d 741 (6th Cir. 2014), the Sixth Circuit rejected similar legal theories by a borrower who alleged fraud at the time a mortgage and note were originated based on the subsequent "securitization" and assignment of the note to another entity.

> Under Fed. R. Civ. P. 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The purposes of Rule 9(b) are (1) to alert defendants to the particulars of the allegations against them so they can intelligently respond; (2) to prevent "fishing expeditions"; (3) to protect defendants' reputations against fraud allegations; and (4) to whittle down potentially wide-ranging discovery to only relevant matters. *Chesbrough v. VPA, P.C.,* 655 F.3d 461, 466–67 (6th Cir.2011). Accordingly, to satisfy Rule 9(b), a plaintiff must (1) specify the time, place, and content of the alleged misrepresentation, (2) identify the fraudulent scheme and the fraudulent intent of the defendant, and (3) describe the injury resulting from the fraud. *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.,* 532 F.3d 496, 504 (6th Cir.2008).

*Thompson, N.A.,* 773 F.3d at 751. The *Thompson* court held that the plaintiff had not adequately pled a fraud claim in relation to the origination of her loan based on the alleged omission of the fact that the originator would not fund the loan and planned to sell it to another party, because the originating documents "are quite clear that AME reserved the

10

right to sell Thompson's note." *Id.*, 773 F.3d at 752. In the above-captioned case, Plaintiff's own exhibit similarly disproves the alleged "non-disclosure."

> In addition, the *Thompson* court pointed out that
>
> AME never represented to Thompson that it would hold or service her loan for any length of time. Without a plausible material misrepresentation, Thompson has no basis for a claim of fraudulent inducement or intentional misrepresentation at the time of closing.).

*Id.*; *see also Smith v. BAC Home Loans Servicing, LP,* 552 Fed .Appx. at 476-77 (6th Cir.2014) (addressing an identical argument, and noting that the borrowers "do not identify any false statements," as opposed to "non-disclosure" in a case in which no fiduciary relationship existed that created a duty for the lender to further explain the loans or loan servicing to the borrowers.) Although *Thompson* arose under Tennessee law, Ohio law is not materially different with respect to Plaintiff's claim of fraudulent inducement. *See also id.*, at 748 and n. 2 (collecting cases and noting "the district courts in this circuit…have entertained a spate of civil actions that advance [similar] legal theories" concerning the validity of promissory notes and mortgages.). And aside from a conclusory assertion that Plaintiff "relied on … [unspecified] representations to his detriment, (Doc. 1-1, ¶ 21), Plaintiff fails to explain how Defendant's representations caused damages. See *Wigley v. American Equity Mortgage*, No. 15-2473-STA-cgc, 2016 WL 866359, at *3 (W.D. Tenn. March 3, 2016) (plaintiffs failed to state plausible claim for fraudulent inducement with particularity because they failed to explain how alleged misrepresentation about American Equity's role in funding Plaintiffs' loan defrauded them or caused them damages when they plainly agreed to the transferability of their note as a term of the transaction.)

11

### 2. Failure to State a Claim for Breach of Contract

In Count 2, Plaintiff alleges a "breach of contract," presumably with respect to his Note. But Plaintiff fails to state a claim in part because he does not identify any specific contractual provision that Defendant breached. Under Ohio law,

> a plaintiff must identify the specific contract language whereby the defendant assumed a legally-enforceable obligation to the plaintiff. This is not a heightened pleading requirement, but rather a stricter enforcement of the requirement of Federal Rule of Civil Procedure 8(a)(2) that a pleading not merely allege, but rather affirmatively show that the pleader is entitled to relief. A plaintiff's failure to identify any contract language that would support the existence of his claimed contractual rights against a defendant is a failure to show that the plaintiff is entitled to relief.

*Smith v. Liberty Mortgage Company, Inc*., No. 2:19-cv-3547-MHW, 2020 WL 2494459, at *7-8 (S.D. Ohio May 13, 2020) (quoting *GKP, LLC v. Wells Fargo & Co*., No. 1:13 CV 01482, 2013 WL 5353799, at *3, 2013 U.S. Dist. LEXIS 136433, at *3 (N.D. Ohio Sept. 24, 2013) (internal citations and quotations omitted)). In *Smith*, the court held that the plaintiffs had failed to state a claim because they did not identify any provision of the contract that the Defendant had breached. In addition, despite allegations that plaintiffs would not have entered into the agreement if they had known that their mortgage loan was going to be transferred, the plaintiffs' own documents clearly acknowledged the possibility of the sale of the note. The same is true here.

Under the auspices of his "breach of contract" claim, Plaintiff also broadly alleges that the "contract failed for lack of lawful and equitable consideration," and that "Defendant did not risk or provide any actual asset of value." (Doc. 1-1, ¶¶ 22-23.) But under Ohio law, "the existence of consideration for promissory notes is presumed." *LaFrance v. Ralich*, 230 N.E.3d 85, 93, 2023 -Ohio- 4291, ¶ 33 (Ohio App. 7 Dist., 2023). In short,

12

Plaintiff's entirely conclusory allegations are insufficient to state a claim for "breach of contract" in the absence of any plausible factual allegations.

### 3. Failure to State a TILA Claim

In "Count 3," Plaintiff alleges that Defendant "failed to disclose the true nature of the transaction, including the treatment of Plaintiff's promissory note as a financial asset," which "constitute[s] material violations of federal law" under the Truth in Lending Act. (Doc. 1-1, ¶¶ 24-25.) Like his other claims, Plaintiff's TILA claim is conclusory. He fails to identify any specific provision of TILA that the Defendant allegedly violated. By failing to "specify the provision or provisions ... if any, that Defendants allegedly violated, or any facts pertaining to [such] a violation," Webb has not presented a coherent claim that Defendants violated any federal law or laws. *Webb v. Beridon*, 2024 WL 3421998, at *1 n.3 (internal citations omitted).

In addition, any possible TILA claims are time-barred on the face of the complaint because the Note and Mortgage in question were executed in February 2022. A one-year statute of limitations applies to most TILA claims. *See* 5 U.S.C. § 1640(e). Although a longer period applies to the right of rescission, that right expires three years after the loan and is not subject to tolling. *See Thielen v. GMAC Mortg. Corp.*, 671 F.Supp.2d 947, 955 (E.D. Mich. 2009). "Dismissal of a TILA claim is warranted when it appears on the face of the complaint to be time-barred." *Smith*, 2020 WL 2494459, at *4.

### 4. Failure to State an Unjust Enrichment Claim

In Count 4, Plaintiff alleges that all "Defendants" (including Guaranteed Rate, Inc. and the ten John Does) "were unjustly enriched through the use, sale, securitization, or transfer of Plaintiff's financial instruments, without consideration or lawful authority." (Doc.

13

1-1, ¶ 26.) Plaintiff's unjust enrichment claim contains insufficient factual matter to be plausible on its face. In addition, Ohio law does not permit recovery under this quasi-contract theory because the Note and Mortgage are contracts between the parties that govern the parties' relationship. *Smith*, 2020 WL 2494459, at *5 (citing *Gascho v. Glob. Fitness Holdings*, LLC, 863 F. Supp. 2d 677, 679 (S.D. Ohio 2012)).

### 5. References to Miscellaneous "Claims"

Above, the undersigned has explained why none of Plaintiff's formally articulated "Causes of Action" contain sufficient factual matter to state a claim as a matter of law. To the extent that any consideration of Plaintniff's very fleeting references to other claims is required, including but not limited to his reference to unspecified violations of the "UCC," intentional or negligent infliction of emotional distress, slander of credit, or conversion, the undersigned recommends dismissal for the same reason. Namely, the complaint fails to include sufficient factual allegations to place either the named Defendant or any John Doe Defendant on fair notice of what the asserted claim is or the grounds upon which it rests.

### B. The Court Lacks Subject Matter Jurisdiction Over Claims for Declaratory and Equitable Relief under the *Rooker-Feldman* Doctrine

As stated, Webb lost his state court foreclosure case and did not appeal the July 3, 2024 judgment. In Count 5, Plaintiff "requests a declaration that the mortgage contract is void ab initio, and that any purported lien, obligation, or claim to the property by Defendants is invalid and unlawful," and seeks an order "directing the return of the original deed/title to Plaintiff." (Doc. 1-1, ¶¶ 27-28.) Count 5 does not appear to be a stand-alone cause of action so much as a request for a type of relief based on Plaintiff's preceding claims. To the extent that "Count 5" is viewed as a separate claim, however, this Court

14

lacks jurisdiction over it under the *Rooker-Feldman* doctrine.

Under 28 U.S.C. § 1257, final judgments of state courts are entitled to receive full faith and credit from federal courts, and lower federal courts lack jurisdiction to review state court decisions. *See D.C. Ct. of App. v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 416 (1923). "The *Rooker–Feldman* doctrine… is confined to cases …brought by state-court losers complaining of injuries caused by state-court judgments…and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). For that reason, the Sixth Circuit distinguishes "between plaintiffs who bring an impermissible attack on a state court judgment - situations in which *Rooker-Feldman* applies - and plaintiffs who assert independent claims before the district court - situations in which *Rooker–Feldman* does not apply." *Kovacic v. Cuyahoga Cnty. Dep't of Children and Family Services*, 606 F.3d 301, 309 (6th Cir. 2010) (additional citations omitted). In *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006), the Sixth Circuit explained that if the "source of the injury is the state court decision," then *Rooker-Feldman* applies.

In the case presented, this Court lacks subject matter jurisdiction to grant Plaintiff declaratory or equitable relief, because such relief would require overturning the state court's prior judgment in favor of JPMorgan Chase Bank in the underlying state foreclosure action. *See, e.g., Collins v. Wells Fargo Bank, N.A. Trustee for Carrington Mortgage Loan Trust*, No. 1:23-cv-164, 2023 WL 3276250, at *4 (N.D. Ohio May 5, 2023); *accord Barney v. HSBC Mortgage Services, Inc*, No. 1:19-cv-2059, 2019 WL 4291157, at *2 (N.D. Ohio Sept. 11, 2019) (dismissing claims that mortgage loan was invalidly and fraudulently assigned and transferred sua sponte because all of the claims rested on

premise that a state court foreclosure judgment was wrong); *Daina v. Carrington Mortgage Services*, LLC, No. 1:17-cv-496, 2017 WL 2832626, at *4 (N.D. Ohio June 30, 2017) (same).

### C. The Application of *Rooker-Feldman* and Res Judicata to Other Claims

Above, the undersigned has explained why the undersigned recommends dismissal on grounds that Plaintiff's factual allegations fail to state any claims as a matter of law, and why the Court lacks jurisdiction to grant his request for equitable relief under *Rooker-Feldman*. The undersigned writes further to explain why Plaintiff's related claims for monetary damages might not be barred by *Rooker-Feldman*, and why judicial economy favors dismissal for failure to state a claim, as opposed to other potentially applicable doctrines including *Rooker-Feldman* and res judicata.

Plaintiff requests five million dollars in monetary damages. "*Rooker-Feldman* does not bar an independent claim that the defendant obtained a state judgment by fraud, misrepresentation, or other improper means." *Collins v. Wells Fargo Bank, N.A.*, 2024 WL 3493330, at *4 (6th Cir. March 29, 2024) (citing *McCormick v. Braverman*, 451 F.3d at 392). So the award of such damages against Guaranteed Rate, Inc. does not *necessarily* require overturning the foreclosure judgment.

Of course, merely alleging that a foreclosure decree was obtained by fraud does not always equate to an "independent claim."

> Despite Hollins applying the label "fraud" to the state court proceedings, she does not plausibly allege that a fraud occurred. Instead, she simply reasserts what she admittedly argued unsuccessfully in state court: that the assignment of the mortgage from MERS to BANA is invalid because the note was already transferred to Countrywide Bank. We take no stance on the merit of that argument, but the state courts were well aware that she disputed the validity of the assignment based on the documents BANA provided. *See Johnson v. Bell*, 605 F.3d 333, 339 (6th Cir. 2010) (noting

16

> that a claim of fraud upon the court requires a showing that the court was deceived). That the state courts were not persuaded, see Rogers, 2019 WL 1762192, at *3-4, does not equate to an "independent claim" of injury attributable to anything other than the state court's decision. *McCormick*, 451 F.3d at 393. Thus, Hollins's claim of fraud asks for federal appellate review of arguments that were unsuccessful in state court.

*Hollins v. Bank of America, N.A.*, 2024 WL 156298, at *2 (6th Cir. 2024); see also *Collins*, 2024 WL 3493330 at *4 (holding that plaintiff had not plausibly alleged fraud). But in the case presented, it is not entirely clear whether Plaintiff's vague and conclusory allegations directly attack the state court judgment as fraudulently obtained, despite the allegation that he was "targeted by a third-party debt collector (JPMorgan Chase Bank)" (Doc. 1-1, ¶ 17.) In light of that ambiguity, the undersigned recommends dismissal for failure to state a claim rather than under *Rooker-Feldman*.

Similar ambiguities and judicial economy preclude the undersigned from recommending dismissal based on the res judicata effect of the state court judgment upholding the validity of the mortgage. Generally speaking, res judicata bars duplicative litigation based on the same event or events. *Montana v. United States*, 440 U.S. 147, 153 (1979); *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979). "The doctrine … therefore precludes a party from bringing a subsequent lawsuit on the same claim or from raising a new defense to defeat the prior judgment." *Collins v. Wells Fargo Bank, N.A. Trustee for Carrington Mortgage Loan Trust*, No. 1:23-cv-164, 2023 WL 3276250, at *4 (N.D. Ohio May 5, 2023) (internal citations omitted). A potential problem in applying the doctrine to the above-captioned case is the fact that Guaranteed Rate, Inc. was not a named party in the state court foreclosure action. In addition, Plaintiff does not directly name JPMorgan Chase Bank, N.A. in this case. For res judicata to apply, the parties generally must be the same or in privity. *See Hasan v. Citimortgage Inc.*, No. 1:16-cv-

17

02417, 2017 WL 238452, at *3 (N.D. Ohio Jan. 19, 2017) (Plaintiff's request for money damages was barred by res judicata insofar as the state court judgment involving same parties already upheld the validity of the mortgage); *but contrast Chappel v. Hunter*, 2024 WL 1307221, at *7 (S.D. Ohio, 2024) (suggesting that res judicata would not apply based on strict delineation in *Taylor v. Sturgell*, 553 U.S. 880, 893–95 (2008) of the six recognized categories of privity for which non-party claim preclusion is permissible.) Examination of privity in this case would require review of matters outside the four corners of the complaint, and arguably beyond the typical scope of review under 28 U.S.C. §1915(e)(2)(B).

### III.  Conclusion and Recommendation

For the reasons stated, **IT IS RECOMMENDED THAT** this case be **DISMISSED with prejudice** based on Plaintiff's failure to state any plausible claims.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Chief Magistrate Judge

18

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ANTHONY-CORTEZ WEBB,

    Plaintiff,

    v.

GUARANTEED RATE INC., et al.,

    Defendants.

Case No. 1:25-cv--652

Dlott, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

19